DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| John R. Heard, | ) | |
| | ) | CASE NO. 5:05 CV 3001 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| County of Summit, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

Before the Court is defendants' motion for summary judgment (Doc. No. 37), plaintiff's

memorandum in opposition (Doc. No. 39),[1] and defendants' reply (Doc. No. 43).  Defendants

have also filed a Motion to Strike Exhibits (Doc. No. 42); plaintiff filed a response (Doc. No. 44)

and defendants filed a reply (Doc. No. 45).  For the reasons discussed below, both motions are

granted.

## I.  BACKGROUND

### A.  Procedural Background

#### 1.  The Complaint

Plaintiff filed this lawsuit on December 30, 2005.  The initial Complaint (Doc. No. 1)

named several defendants, including the Summit County Sheriff's Department, Sheriff Drew

Alexander, and Assistant Sheriff Steven W. Finical, all sued in both their individual and official

capacities, plus sheriff's deputies and others sued only in their individual capacities.  Plaintiff

---

[1] This document is incorrectly styled as an "Answer."

(5:05 CV 3001)

alleged that his constitutional rights had been violated while he was a pretrial detainee at the

Summit County Jail.

Plaintiff subsequently amended the complaint (Doc. No. 3) and several of the defendants

filed an answer (Doc. No. 8).  Following the Case Management Conference on February 23,

2006, the Court directed the plaintiff to file a Second Amended Complaint, which he did.  (Doc.

No. 14).  It is that Complaint which is currently before the Court, as modified by subsequent

orders described below.

The Second Amended Complaint (hereafter "Complaint") named eleven defendants: (1)

Summit County; (2) Summit County Sheriff's Department; (3) Sheriff Drew Alexander; (4)

Assistant Sheriff Steven Finical; (5) Deputy Sheriff Barry Davidson; (6) Deputy Sheriff Douglas

Edwardson; (7) Deputy Sheriff Joseph Winkler; (8) Danny Ray; (9) Matthew Brown; (10) Brian

Nesby; and (11) ____ Barnes.  The first four defendants were sued in their individual and official

capacities; the remaining seven were sued only in their individual capacities.

The Complaint set forth nine separate counts, the following six being federal

constitutional and statutory claims: [2]

---

[2] The remaining three claims were state law claims:

(VII)   a claim under O.R.C. § 2921.44(C)(3), (5) & (E) against Alexander and Finical
        for negligent failure to control detainees, failure to prevent injury, and failure to
        reasonably manage the jail;

(VIII)  a claim under O.R.C. § 2921.44(C)(3), (5) & (E) against Davidson, Edwardson,
        and Winkler for negligent failure to control detainees, failure to prevent injury,
        and failure to reasonably manage the jail; and

(continued...)

(5:05 CV 3001)

> (I)     a claim under 42 U.S.C. § 1983 and the fourteenth amendment against the
> County, the Sheriff's Department, Alexander, Finical, Davidson, Edwardson and
> Winkler, alleging state-created danger and failure to prevent an attack by other
> inmates;
>
> (II)    a claim under 42 U.S.C. § 1983 and the fourteenth amendment against Davidson,
> Edwardson and Winkler, alleging a failure to intercede on plaintiff's behalf to
> prevent a brutal beating by other inmates;
>
> (III)   a claim under 42 U.S.C. § 1983 against the County and the Sheriff's Department,
> alleging an official policy, custom and practice of failure to instruct, supervise,
> control and discipline county jail officers; [3]
>
> (IV)    a claim under 42 U.S.C. § 1985 against Davidson, Edwardson, and Winkler,
> alleging conspiracy to violate civil rights;
>
> (V)     a claim under 42 U.S.C. §§ 1983 and 1986 and the fourteenth amendment against
> Alexander for supervisory liability; and
>
> (VI)    a claim under 42 U.S.C. §§ 1983 and 1986 and the fourteenth amendment against
> Finical for supervisory liability.

## 2.  Discovery and Other Pre-Motion Proceedings

On February 23, 2006, the Court conducted the Case Management Conference and

ordered that discovery would be stayed for a short time and that, when discovery did commence

--------

[2] (...continued)
(IX)    a claim of assault and battery against Ray, Brown, Nesby and Barnes.

By Memorandum Opinion dated June 14, 2006 (Doc. No. 20), Counts VII and VIII were
dismissed, as was defendant Summit County Sheriff's Department.
There is no indication that defendants Ray, Brown, Nesby, and/or Barnes have ever been
served.  Therefore, those four defendants are now dismissed, as is Count IX against them.  See
Petty v. County of Franklin, OH, No. 06-3552, 2007 WL 487003, at * 4-5 (6th Cir. March 6,
2007).

[3] Since the Sheriff's Department has already been dismissed it is no longer at issue with
respect to Counts I and III.

3

(5:05 CV 3001)

following the filing of the Second Amended Complaint, it should begin with defendants'

deposition of the plaintiff, who was then incarcerated.  All fact discovery was to be completed by

August 31, 2006 and a status conference was set for September 7, 2006.  (Doc. No. 12)

Defendants filed a motion to dismiss on April 19, 2006 (Doc. No. 16), shortly after filing

their Answer to the Second Amended Complaint (Doc. No. 15).  Plaintiff sought and was

granted an extension to May 16, 2006 to respond to the motion and defendants were granted

until June 7, 2006 to reply.  (Doc. Nos. 17 and 18).  On June 14, 2006, the Court issued its ruling

dismissing the Summit County Sheriff's Department and Counts VII and VIII.  (Doc. No. 20).

On August 9, 2006, defendants filed an unopposed motion for a 60-day extension of the

fact discovery cutoff, asserting that the plaintiff's deposition which had been set for "early

August" had to be rescheduled to August 25, 2006 "due to Plaintiff's Counsel's Trial schedule."

(Doc. No. 23).  In an Order issued on August 11, 2006 (Doc. No. 24), the Court expressed its

deep concern over the "leisurely pace" of discovery, noting that there was no excuse for failing

to schedule plaintiff's deposition before "early August," given that the discovery stay had been

lifted on March 31, 2006 and the motion to dismiss and been resolved by June 14, 2006.

Although the Court granted the extension of the discovery cutoff to October 31, 2006, it warned

that there would be "no further extensions" (emphasis in Order) and set a status conference for

November 7, 2006.  Despite that order, on August 24, 2006, plaintiff's counsel moved for

another extension of plaintiff's deposition from August 25 to September 8, 2006.  (Doc. No. 25).

Generously, the Court granted the motion by non-document order on August 30, 2006.

4

(5:05 CV 3001)

On October 26, 2006, plaintiff's counsel again moved for a 30-day extension of the discovery cutoff.  (Doc. No. 32).  The Court denied that motion, stating that "enough is enough," but directed counsel for the plaintiff to come to the November 7, 2006 status conference "prepared to identify in detail what, if any, specific discovery is still needed and precisely why that discovery has not been conducted sooner."  (Doc. No. 33).  The Court also noted: "If extremely good cause is shown, the Court may consider allowing some additional, but very limited, discovery."

On November 2, 2006, plaintiff's counsel moved to continue the November 7 status conference on the ground that he was "assigned to serve as an observer at the polls for elections."  (Doc. No. 34).   By Order dated November 6, 2006 (Doc. No. 35), the Court canceled the status conference, reiterated that "discovery is over" and set up a schedule for the briefing of dispositive motions.  (Doc. No. 35).

Defendants timely filed their motion for summary judgment on November 30, 2006 and the motion was fully briefed by December 20, 2006.

Unbelievably, on January 5, 2007, plaintiff's counsel filed a notice to take the depositions of defendants Alexander, Finical, Davidson, Edwardson, and Winkler, beginning at 2:30 p.m. on January 23, 2007 and continuing from day to day until complete.  (Doc. No. 46).  On defendants' motion (Doc. No. 47), the Court quashed the deposition subpoenas (Doc. No. 48).

**B.  Factual Background**

The facts alleged in the Complaint are as follows:

5

(5:05 CV 3001)

15.  On January 5ᵗʰ 2004 Plaintiff, John R. Heard, entered the Summit County Jail, in Akron, Ohio, accused of a violent sexual attack upon a minor child.  Plaintiff's alleged crimes were widely publicized.  Plaintiff sat in a holding cell for three (3) days before being taken to Pod 4A, a general population housing unit, to be housed.

16.  On January 8, 2004, Plaintiff was taken to Pod 4A and was assigned to a cot, on the west side of the open pod by the stairs.  Summit County Jail policy required Defendants to house Plaintiff in a cell, as a security risk[2], and not on a cot in the open pod.  Plaintiff had a boil on his shin and wanted it treated.  Plaintiff "kited" the infirmary seeking medical help.  Plaintiff was taken to the infirmary for treatment, and was returned to the Pod.

[2] The negative publicity, the fact that Plaintiff's [sic] was charged with several counts of raping a 3 year old child, and distinct possibility that Plaintiff would be harmed by other pretrial detainees made him a higher security risk.

17.  The Akron Beacon Journal was delivered to Pod 4A.  The paper had an article in it outlining in detail the sexual charges against the minor child for which Plaintiff had been arrested and placed in the county jail.  Pre-trial detainees on the Pod had access to the newspaper, through the deputies, and read the article concerning Plaintiff.

18.  While Plaintiff was sleeping on his cot, Summit County Sheriff Deputy Barry Davidson, along with Defendant Joseph Winkler entered the Pod (4A).  Once inside the pod Defendant Deputy Davidson asked "Where is the pervert who likes to hurt little boys?"  Defendant Deputy Davidson asked Defendant Danny Ray who the "pervert" was [referring to Plaintiff John R. Heard] and "Why hasn't anyone beaten his ass?"  Defendant Deputy Davidson called John R. Heard a "piece of white trash."

19.  Pre-trial detainees on the Pod had been discussing the case against Plaintiff Heard.  They had passing [sic] around a newspaper article concerning Plaintiff and the charges pending against him, and had been taunting him.  Defendant Deputy Davidson told several pre-trial detainees that if something were to happen to Plaintiff he would look the other way, and no one would go to the "Hole."

20.  Defendant Douglas Edwardson, who was the third shift Pod officer assigned to Pod 4A, was not initially present when Defendants Davison [sic] and Winkler entered Pod 4A.  Upon returning to Pod 4A, Defendant Edwardson was informed of everything that was said by Defendant Davidson.  Upon hearing it,

6

(5:05 CV 3001)

Defendant Edwardson said he wasn't going to be a part of it, and picked up his clipboard and went outside of the pod to the computer console. Defendants Davidson and Winkler left the pod shortly after all this was done. Defendants Davidson, Winkler were in the area of Pod 4A during the times the events described herein took place.

21. After Defendants Davidson and Winkler left Pod 4A, Defendant Edwardson was still at the computer console in the hallway outside of the Pod. There was no security in the Pod. Defendants Danny Ray, Matthew Brown, Brian Nesby, Barnes, and other unknown pretrial detainees who were in the living quarters (4A), went to Plaintiff Heard's cot and attacked Plaintiff Heard as he lay sleeping on his cot. Defendants Danny Ray, Brown, Nesby, Barnes and other pretrial detainees beat, kicked, and stomped Plaintiff as Plaintiff screamed for help.

22. The Plaintiff managed to break free and run to the Pod door to seek help. However, the sheriff deputies at or near the door in the hallway did not respond to Plaintiff's screams for help. The pretrial detainees that attacked Plaintiff dragged Plaintiff back into the Pod area and continued beating and kicking Plaintiff.

23. Subsequently, Plaintiff was able to break free from the pre-trial detainees beating him and ran to the door of the Pod. Plaintiff was severely beaten for more than ten (10) minutes. This time Defendant Deputy Edwardson opened the door. Plaintiff was able to run out of the Pod to safety. Upon escaping out of the Pod, Plaintiff collapsed on the floor. Plaintiff had to be rushed to Akron General Medical Center for treatment.

24. Plaintiff suffered several fractures, abrasions, contusions, several deep cuts, hearing loss and his ear was full of blood. After being treated at the Akron General Medical Center, Plaintiff was returned to the county jail and was asked if he wanted to press charges. Plaintiff stated that he wanted to press charges. Afterward, Plaintiff was placed in a holding cell for two (2) days with no mattress or blanket (in January) at a time when the temperature in the holding cells was almost as cold as the outdoors [sic] conditions.

25. Plaintiff was later taken to "core housing" where he remained locked down for twenty-three (23) hours a day. During his time in "core housing" the injury to Plaintiff's finger continued to get worse because of infection. The county jail medical personnel failed to properly treat Plaintiff's finger and finally, after repeated request [sic] by Plaintiff, medical personal [sic] decided to send Plaintiff to Summa for treatment.

7

(5:05 CV 3001)

> 26.  Once at Summa, emergency surgery was performed on Plaintiff's
> finger and he remained at Summa for five (5) days.  On the fifth day at Summa,
> Plaintiff was experiencing difficulty hearing and asked to have his ears checked.
> That day a hearing test was performed on Plaintiff.  After the test, Plaintiff was
> informed that as a result of his severe beating he had lost 30 to 50 per cent of his
> hearing in his right ear, and that the condition would worsen over time.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 .  When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion."  U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).  However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]"  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  See Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).  Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony."  Reid v. Sears Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986) (citing Biechell v. Cedar Point, Inc.,

8

(5:05 CV 3001)

747 F.2d 209, 215 (6th Cir. 1984)); but see Baer v. Chase, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit").  Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, 477 U.S. at 250.  Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52. See also Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

## III.  DISCUSSION

### A.    Defendants' Motion to Strike (Doc. No. 42)

The starting point for this discussion must be the defendants' motion to strike documents attached to plaintiff's response to the motion for summary judgment, among which are affidavits

9

(5:05 CV 3001)

of James Lee Downing, Keith Adams and Craig Fisher, and copies of certain policies of Summit

County.

      The Court considers first the three affidavits.

      The affidavit of Fisher was signed on October 31, 2006, the very day of the discovery

cut-off.[4]  Fisher alleges to have been a jail detainee in the same pod as the plaintiff on January 8,

2004; but he did not witness any beating.  In his affidavit, he claims that Brian Nesby bragged to

him about beating up the plaintiff and, although Nesby and Fisher were in the "Hole" together,

Nesby never lost any privileges and seemed to be given "special privileges."  The implication is

that jail officials were rewarding Nesby for beating up the plaintiff, which is obviously mere

conjecture on Fisher's part.

      Plaintiff argues in response to the motion to strike that he should be allowed to submit

this affidavit because the whereabouts of Fisher was not known to him, nor did he have the

affidavit, at the time of his initial disclosures.

      Even if plaintiff were correct that an exception should be made for the affidavit of Fisher

despite its being out of rule with respect to the discovery cut-off, the affidavit is clearly full of

---

[4]  The Local Rule 16.1(b)(6) of the Northern District of Ohio defines "discovery cut-off" as follows:

> "Discovery cut-off" is that date by which all responses to written discovery shall be due according to the Federal Rules of Civil Procedure and by which all depositions shall be concluded.  Counsel must initiate discovery requests and notice or subpoena depositions sufficiently in advance of the discovery cut-off date so as to comply with this rule, and discovery requests that seek responses or schedule depositions after the discovery cut-off are not enforceable except by order of the Court for good cause shown.

(5:05 CV 3001)

hearsay and mere conjecture.  There is no doubt that this affidavit must be stricken from the record as it has no evidentiary value within the meaning of Rule 56.

Downing's affidavit was signed on June 14, 2005 and Adams' affidavit was signed on October 17, 2005, both well over a year before the October 31, 2006 discovery cut-off date. Both affiants assert that they were detainees in the same pod as the plaintiff on January 8, 2004 and that they observed some inmates harassing the plaintiff because of information they had obtained from a newspaper article that was circulating in the pod.  They both claim that defendant Davidson entered the pod and asked: "Where is the pervert who likes to hurt little boys?"  Davidson allegedly suggested that if something were to happen to the plaintiff, he would essentially look the other way.  Shortly thereafter, Davidson left the pod and the taunting inmates began to beat the plaintiff.

These two affidavits are more troubling than that of Fisher, which is easily stricken. Assuming one were to believe the information contained therein,[5] they are quite damaging to the defendants' case, at least with respect to defendant Davidson.  In light of the affidavits of Edwardson, Winkler and Davidson attached to the motion for summary judgment (all of which are contrary to plaintiff's three affidavits), at the very least these two affidavits would create a material factual dispute which would preclude summary judgment as to Davidson.

Plaintiff admits in response to the motion to strike that he "inadvertently" failed to give these affidavits to the defendants.  He argues that "such inadvertence was an honest mistake and

---

[5] In his "Answer" to the motion for summary judgment, plaintiff refers to these affidavits as "eye witness account[s] of the Defendant's [sic] actions."  (Doc. No. 39 at 6).  This provides all the more reason they should have been timely disclosed to the defendants.

11

(5:05 CV 3001)

was not done intentionally and/or with motive to prejudice the Defendants." (Doc. No. 44 at 4).

Plaintiff argues that a district court is permitted, but not required, to strike evidence such as this.

Unbelievably, plaintiff also argues that the affidavits were "timely provided" (Id. at 5) on

November 3, 2006 in response to defendants' first request for discovery.  How plaintiff can

believe a response provided three days *after* the discovery cut-off is "timely" is beyond

understanding.  Although plaintiff does not make the argument that defendants' first request for

discovery was not served until October 3, 2006, which also does not comply with the Local Rule

defining discovery cut-off, the Court would not be swayed even if he had made that argument

because it does not address plaintiff's absolute duty under Rule 26 to *disclose* these witnesses'

statements.

  The Court cannot overlook the prejudice to the defendants brought about by plaintiff's

failure to disclose these two witnesses under Rule 26 or in any other way during the course of

discovery, even though both affidavits were signed a year before discovery ended and even

though plaintiff's initial disclosures were not served until February 21, 2006, months after the

two affidavits were signed.  (See Doc. No. 9).  These two affidavits and/or witnesses should have

been disclosed at least by February 2006.

  During plaintiff's deposition which took place on September 8, 2006, about six weeks

before the discovery cut-off, plaintiff himself identified Downing, Adams and Fisher as potential

witnesses who had made statements on his behalf.  (Heard Dep. at 38).  In a letter from

defendants' counsel to plaintiff's counsel dated October 3, 2006 (again, before the discovery cut-

off), counsel noted that she still had not received these three witness statements and that she

12

(5:05 CV 3001)

wanted plaintiff's counsel to indicate which of five proposed dates would be acceptable for deposing these three witnesses.  Apparently, as was his strategy, plaintiff's counsel did not respond to this letter.[6]  The affidavits were not supplied until November 3, 2006, when plaintiff served his discovery responses.

   If the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Ohio are to have any meaning at all, they must be enforced.  Plaintiff had more than sufficient opportunities to produce these documents and he certainly had the duty to do so and to disclose these witnesses.  Unfortunately, plaintiff's strategy throughout this litigation to date has been to avoid responsibility, to extend deadlines, to ignore court orders and, generally, to act in a cavalier fashion when it came to case management responsibilities.

   The Court is of the view that the prejudice to defendant Davidson under the circumstances is too great if these two affidavits are not stricken from the record.  The Court is of the further view that it has given plaintiff and plaintiff's counsel more than sufficient chances to comply with the discovery rules and they have squandered those chances to their own detriment.

   Defendants' motion also challenges plaintiff's submission of three exhibits (E, F, and G) which purport to be policies of the Summit County Sheriff, but which are all unauthenticated. Plaintiff has not responded to this portion of the motion to strike nor can the Court find any

---

  [6] In the response to the motion to strike, the lack of response is attributed to "Plaintiff's counsel's heavy trial schedule and other commitments."  (Doc. No. 44 at 6).  This is no excuse.

(5:05 CV 3001)

reference to these three exhibits, or any reason for their submission, in plaintiff's response to the summary judgment motion.  The Court finds that defendants' argument has merit under Rule 56.

Accordingly, defendants' motion to strike (Doc. No. 42) is granted.  None of the exhibits (A, B, C, E, F and G) attached to Doc. No. 39 will be considered.


**B.      Claims brought under 42 U.S.C. §§ 1985 and 1986**

Of the six federal causes of action, Count IV purports to bring a claim under 42 U.S.C. § 1985 for conspiracy to violate civil rights; Counts V and VI purport to bring claims under 42 U.S.C. § 1986 for knowing failure to prevent the violation of civil rights.[7]

In order to state a cause of action under § 1985, a plaintiff must allege the existence of: "(1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen."  Collyer v. Darling, 98 F.3d 211, 233 (6th Cir.1996).  Importantly, the plaintiff must also allege that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  Bartell v. Lohiser, 215 F.3d 550, 559-60 (6th Cir.2000) (quoting United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 829 (1983)).

---

[7] Counts V and VI also raise § 1983 claims for supervisory liability.  These are discussed elsewhere in this opinion.

14

(5:05 CV 3001)

Section 1986 creates a cause of action for a defendant's knowing failure to prevent a §
1985 conspiracy.  Where a plaintiff has stated no cause of action under § 1985, no cause of
action exists under § 1986.  See Smith v. Thornburg, 136 F.3d 1070, 1078 (6th Cir.1998).

In this case, there can be no § 1985 claim because the Complaint is completely devoid of
any assertion of racial or class-based discriminatory animus.  As a result, there can be no viable
§ 1986 claims.

Accordingly, Count IV is dismissed with prejudice.  To the extent Counts V and VI
attempt to assert claims under 42 U.S.C. § 1986 which are dependent upon Count IV, those
claims are also dismissed with prejudice.


**C.      Claims under 42 U.S.C. § 1983** [8]

Counts I, II, III, V and VI assert claims under 42 U.S.C. § 1983 grounded in varying
theories.

**1.  State-Created Danger Claims (Counts I and II)**

---

[8]  Defendants argue that plaintiff's previously filed state court lawsuit against the
Sheriff's Department, Alexander and Edwardson, which was dismissed on grounds of immunity
under state law, precludes the current action.  Because of this Court's disposition of the various
claims in plaintiff's Complaint, it declines rendering any opinion with respect to this argument;
however, a cursory review of the unpublished decision relied upon by the defendants suggests
that their argument has no merit.  In Fleming v. City of Detroit, No. 04-74081, 2006 WL
2559862 (E.D. Mich. Sept. 1, 2006), the plaintiff had filed a previous *federal* lawsuit asserting §
1983 claims.  Summary judgment had been granted for the defendants and the Sixth Circuit
affirmed.  Plaintiff brought another action based on the same circumstances.  The district court
applied the doctrine of *res judicata* to bar the second action.  In the instant case, plaintiff brought
a state claim in a state court; the claim was dismissed on state grounds.  The instant case is
distinguishable from Fleming.

15

(5:05 CV 3001)

Count I is based on the "state-created danger" theory.  Plaintiff alleges that the various county defendants (i.e., the County, the Sheriff, and the officers) "allowed Plaintiff to be intimidated, assaulted and beaten[ ]" and "[did not] attempt in any way to assist Plaintiff." (Compl. ¶ 31).  He further alleges that these defendants "knew or should have known that that [sic] their actions endangered Plaintiff; that Plaintiff would be or was at risk of being attacked, and that there existed a pervasive risk of harm to Plaintiff."  (Compl. ¶ 32).  He concludes that the county defendants "had the means and opportunity to prevent the attacks from occurring, but deliberately failed to do so[ ]" (id.), in violation of the fourteenth amendment.

Count II is similar to Count I, alleging that the defendants Davidson, Edwardson and Winkler caused plaintiff's injuries by failing to prevent the beating and by failing to intercede on his behalf during the beating by the other detainees.  He also asserts that the beating occurred "with the encouragement and/or permission of [the defendants.]"  (Compl. ¶ 40).

Generally there is no affirmative duty on the part of state actors to protect the interests of individuals and, therefore, state actors cannot be liable for injuries caused by violent acts of third parties.  DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189, 196, 198 (1987).  There are exceptions to this rule, in particular, where state actors have a "special relationship" with an individual, or where their conduct toward the individual results in a "state-created danger."  Kallstrom v. City of Columbus, 136 F .3d 1055, 1066 (6th Cir.1998).

It is this latter theory of "state-created danger" upon which plaintiff relies.  This exception applies when the state either plays a role in creating a danger to an individual or renders an individual more vulnerable to a danger.  Kallstrom, 136 F.3d at 1066.  Individuals

16

(5:05 CV 3001)

have "a clearly established right under the substantive component of the Due Process Clause to personal security and to bodily integrity."  Doe v. Claiborne County, 103 F.3d 495, 507 (6th Cir.1996).  Therefore, under DeShaney a state agent is liable for his or her acts that expose an individual to harm that otherwise would not exist.  Jones v. Union County, TN, 296 F.3d 417, 428 (6th Cir.2002) ("state-created danger" arises when the state affirmatively acts to expose an individual to potential danger); Gazette v. City of Pontiac, 41 F.3d 1061, 1065 (6th Cir.1994).

Under Kallstrom, a court asks whether the defendant, while aware of the risk being created, took affirmative action that placed the victim in "special danger."  136 F.3d at 1066.  The issue is whether the officers did anything "affirmative" to "embolden" the person causing harm to another.  Jones v. Reynolds, 438 F.3d 685, 703 (6th Cir.2006) ("[W]here officers enable or embolden a private actor to drive dangerously, they commit an affirmative act for state-created-danger purposes.").  Failure to act, as opposed to affirmative conduct, does not cause a "state-created danger" to arise.  Cartwright v. City of Marine City, 336 F.3d 487, 493 (6th Cir.2003); Sargi v. Kent City Board of Education, 70 F.3d 907, 912-13 (6th Cir.1995).

In their affidavits, Davidson and Winkler (who were not on the pod when the beating occurred) deny any negative animus toward the plaintiff and further deny ever making any statements on the pod to other detainees with respect to the plaintiff.  Edwardson, who was the officer on the pod when the beating occurred, having taken over from Davidson and Winkler, states in his affidavit that he responded immediately when, from his place at the computer just outside the pod, he heard pounding on the pod door.  He observed Nesby strike plaintiff on the head and called for backup.  He entered the pod and ordered Nesby and plaintiff to stop their

17

(5:05 CV 3001)

fighting, which they did.  He advised the nursing staff of the altercation and they determined that

plaintiff should be transported to the hospital for care.

Here, plaintiff cannot meet the "affirmative act" requirement necessary to establish a

state-created danger substantive due process claim.  Even though he generally alleges in Count II

of his Complaint that the officers encouraged the beating, he offers nothing by way of evidence

to even remotely create an issue of fact.  Under Rule 56, he cannot simply rely on this bare

allegation in his Complaint.

Accordingly, defendants are entitled to summary judgment on Counts I and II.


**2.  Supervisory Liability Claims (Counts V and VI)**

In Counts V and VI, plaintiff alleges that Sheriff Alexander and Assistant Sheriff Finical,

respectively, are liable for his injuries because they "knew or in the exercise of due diligence

should have known that the conduct of the other Defendant officers was likely to occur."

(Compl. ¶¶  54, 60).

The Sixth Circuit has held that, to establish supervisory liability,"[a]t a minimum, a

§1983 plaintiff must show that a supervisory official at least implicitly authorized, approved

knowingly acquiesced in the unconstitutional conduct of the offending subordinate."  Turner v.

City of Taylor, 412 F.3d 629, 643 (6th Cir.2005).  This requires, first, unconstitutional conduct.

Plaintiff has not established any such conduct on the part of Davidson, Edwardson, and/or

Winkler.  Even if he had, he has further failed to establish any implicit authorization of

unconstitutional conduct.

18

(5:05 CV 3001)

> "Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act."  <u>Bass v. Robinson</u>, 167 F.3d 1041, 1048 (6th Cir.1999) (citing <u>Leach v. Shelby County Sheriff</u>, 891 F.2d 1241, 1246 (1989)).  Rather, the supervisors must have actively engaged in unconstitutional behavior.  <u>Id</u>.  Therefore, liability must lie upon more than a mere right to control employees and cannot rely on simple negligence.  <u>Id</u>.

<u>Gregory v. City of Louisville</u>, 444 F.3d 725, 751 (6th Cir. 2006).

Here, plaintiff's bare allegation that Alexander and Finical "failed to take any preventative or remedial measures to guard against the conduct of the other Defendant officers" (Compl. ¶¶ 55, 61) is insufficient to establish supervisory liability.

Accordingly, defendants are entitled to summary judgment on Counts V and VI.


### 3.  Custom/Policy Claim (Count III)

In Count III of his Complaint, plaintiff alleges that Summit County and the Summit County Sheriff's Department are liable under § 1983 for maintaining an "official policy or custom and practice" of "intentionally, knowingly, recklessly, or with deliberate indifference to the rights of the pre-trial detainees . . . fail[ing] to instruct, supervise, control and/or discipline, on a continuing basis, Defendants Davidson, Edwardson and Winkler, in the performance of their duties[.]"  (Compl. ¶ 47).  Since the Sheriff's Department, not being *sui juris*, has already been dismissed, this count is now leveled at only the County.

In the first place, the Court has already determined that plaintiff has failed to establish any fourteenth amendment violation by Davidson, Edwardson and/or Winkler.  Without such a violation, Count III has no meaning.  <u>See</u> <u>Scott v. Clay County, TN</u>, 205 F.3d 867, 879 (6th Cir. 2000) ("our conclusion that no officer-defendant had deprived the plaintiff of any constitutional

(5:05 CV 3001)

right *a fortiori* defeats the claim against the County as well") (citing <u>City of Los Angeles v.</u>

<u>Heller</u>, 475 U.S. 796, 799 (1986) ( per curiam) ("If a person has suffered no constitutional injury

at the hands of the individual police officer, the fact that the departmental regulations might have

authorized the use of unconstitutionally excessive force is quite beside the point.") (emphasis the

Court's)).

Assuming for the sake of argument that there were a constitutional violation, in order to

render the County liable for that violation by its employees, the plaintiff would have to establish

both an official policy or custom of the county and that his injuries we causally linked to that

policy or custom.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978); <u>see also,</u>

<u>Cummings v. City of Akron</u>, 418 F.3d 676, 684 (6th Cir. 2005) (applying <u>Monell</u> in a case

alleging municipal liability).[9]

Here, the plaintiff has made no effort to identify any official custom or policy of Summit

County with regard to his constitutional claim, nor has he come forward with any facts to

demonstrate how, even if there were a custom or policy of the County, his injuries are causally

linked to the County's alleged failure to instruct and/or supervise.  There is simply nothing in

this record, short of the allegations of the Complaint, to establish any basis for custom or policy

liability.

---

[9]  "[S]ection 1983 actions against municipalities [or counties] carry certain special elements, including proof (1) that the City [or county] pursued an official custom or policy of failing to adequately train, supervise, or discipline its officers in a particular matter, and (2) that such official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." <u>Haverstick Enterprises v. Financial Federal Credit</u>, 32 F.3d 989, 996 n. 8 (6th Cir.1994).

20

(5:05 CV 3001)

        The defendant County is entitled to summary judgment with respect to Count III.


## IV.  CONCLUSION

        For the reasons discussed herein, defendants' motion to strike (Doc. No. 42) is granted.

Further, defendants' motion for summary judgment (Doc. No. 37) is also granted and this case

will be dismissed.

        IT IS SO ORDERED.



  March 19, 2007                     *s/ David D. Dowd, Jr.*
Date                                David D. Dowd, Jr.
                                      U.S. District Judge